IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEFF BROWN, and SHERRI GOTHIER, Parents & father and Next Friend of KB, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE MEDICAL SERVICES (Wayne, Nebraska), MERCY MEDICAL CLINICS, (Sioux City, Iowa), and BENJAMIN J. MARTIN, M.D.,<br><br>Defendants. | CASE NO. 8:10CV230<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the following motions: Defendants' Motions to Dismiss (Filing Nos. 29 and 31); the Plaintiffs' Motion to Amend Complaint (Filing No. 38); and the Plaintiffs' Motion to Strike (Filing No. 45) in which Plaintiffs ask the Court (1) to strike as untimely and to disregard that portion of the brief submitted by Defendants Mercy Medical Clinics and Benjamin Martin (Filing No. 42) that replies to Plaintiffs' Opposition to Defendants' Motion to Dismiss, and (2) to strike those Defendants' Index of Evidence (Filing No. 43). For the reasons discussed below, the Motion to Amend Complaint will be granted in part, and the remaining motions will be denied as moot.

## FACTUAL AND PROCEDURAL HISTORY

For purposes of the pending Motions to Dismiss, the factual assertions in the Amended Complaint (Filing No. 20) are accepted as true, although the Court need not accept the Plaintiffs' conclusions of law.

On the evening of January 24, 2010, KB, a nine-year-old girl residing in Laurel, Nebraska, was bleeding as the result of a tonsillectomy. Her mother, Sherri Gothier

("Gothier"), called 911, and an EMT ambulance transported KB from her home to Providence Medical Center ("PMC") in Wayne, Nebraska. PMC had a dedicated emergency department open to the public, and was a "participating hospital" under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd. Mercy Medical Services ("MMS"), a corporate medical staffing contractor incorrectly named as "Mercy Medical Clinics" in the Plaintiff's pleadings, contracted with PMC to provide it with doctors who specialized in certain medical services. Benjamin Martin, M.D. ("Martin"), was a licensed physician employed by MMS and/or PMC, and was the emergency doctor on duty at PMC when KB arrived on January 24, 2010, at 7:57 p.m.

Martin noted that KB had postoperative bleeding, and anemia due to blood loss, and that her pharynx was bleeding and swollen, obstructing his vision of the area. Martin ordered KB's transfer to the Iowa Mercy Medical Center in Sioux City, Iowa, and she and Gothier left for Sioux City in an ambulance at 8:35 p.m., accompanied by nurses. En route to Sioux City, KB's heart rate and blood pressure dropped, she vomited blood and blood clots, and her airway became obstructed. The nurses were unable to intubate KB due to blood and blood clots obstructing her airway. KB asphyxiated, and received CPR in the ambulance. When she arrived at Iowa Mercy Medical Center at 10:08 p.m., she had suffered brain injury due to asphyxia. On January 26, 2010, KB was transported to Children's Hospital in Omaha, Nebraska, and on January 27, 2010, she was pronounced dead.

Plaintiff Jeff Brown, father and next friend of KB, deceased, initiated this action with the filing of his Complaint (Filing No. 1) on June 18, 2010, invoking this Court's federal subject matter jurisdiction under EMTALA, and requesting that the Court exercise

supplemental jurisdiction over his related state-law claims. Brown, along with Gothier, filed an Amended Complaint on August 3, 2010, within 21 days of the filing of a responsive pleading. Defendants MMS and Martin moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state claims upon which relief can be granted. These Defendants also suggest the Court should decline to exercise supplemental jurisdiction over the Plaintiffs' state-law claims, because those claims present novel issues of state law and predominate over the Plaintiffs' federal claim. Defendant Providence Medical Center also moved to dismiss, joining in the arguments presented by MMS and Martin. The Plaintiffs moved for leave to file a Second Amended Complaint, which Defendants MMS and Martin oppose, asserting that the motion is futile. MMS and Martin have submitted an index of evidence consisting of certain medical records that they ask the Court to consider in conjunction with their Motion to Dismiss and their opposition to Plaintiffs' Motion to Amend, recognizing that the Court's consideration of the evidentiary materials would convert their pending Motion to Dismiss into one for summary judgment. (Filing No. 42 at 2 n.2; Fed. R. Civ. P. 12(d).)

## STANDARD OF REVIEW

### Fed. R. Civ. P. 12(b)(1)

A motion pursuant to Fed. R. Civ. P. 12(b)(1) challenges whether the Court has subject matter jurisdiction to hear the matter. The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir. 2000). The Court, however, has "'wide discretion'" to decide the process with which its jurisdiction can best be determined. *Johnson v. United States,* 534 F.3d 958, 964 (8th Cir. 2008) (quoting *Holt v. United States,* 46 F.3d 1000,

3

1003 (10th Cir. 1995)).  It "has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* at 962 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  *See also Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008) ("Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts.") (citing *Osborn v. United States*, 918 F.2d 724, 728-30 (8th Cir. 1990)).

**Fed. R. Civ. P. 12(b)(6)**

Pursuant to the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Moreover:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim.  *Id*. at 556.

When ruling on a Defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint

4

may proceed even if" it strikes a savvy judge that actual proof of those facts is improbable, and "'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir.) (citing *Twombly,* 550 U.S. at 556 n.3), *cert. denied,* 130 S. Ct. 628 (2009). The Court, "therefore, is not required 'to divine the litigant's intent and create claims that are not clearly raised,' and it need not 'conjure up unpled allegations' to save a complaint." *Id.* (quoting *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 839 (8th Cir. 2004) and *Rios v. City of Del Rio,* 444 F.3d 417, 421 (5th Cir. 2006)).

## DISCUSSION

This Court's subject matter jurisdiction depends upon the sufficiency of the allegations in Count I of the Amended Complaint, asserting a violation of EMTALA on the part of PMC. Essentially, the Plaintiffs allege that PMC's emergency medical department undertook the care and treatment of KB and failed "to provide emergency medical care within the scope and guidelines" of 42 U.S.C. § 1395dd, *et seq.* (Filing No. 20, ¶ 26.)

EMTALA provides, in relevant part:

(a) Medical screening requirement

In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

(b) Necessary stabilizing treatment for emergency medical conditions and labor

5

> (1) In general
>
> If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either–
>
>> **(A)** within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>>
>> **(B)** for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
>
> . . . .
>
> (c) Restricting transfers until individual stabilized
>
> (1) Rule
>
> If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual unless--
>
>> **(A)(i)** the individual (or a legally responsible person acting on the individual's behalf) after being informed of the hospital's obligations under this section and of the risk of transfer, in writing requests transfer to another medical facility,
>>
>> **(ii)** a physician . . . has signed a certification that based upon the information available at the time of transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual . . . and . . .
>>
>> **(B)** the transfer is an appropriate transfer (within the meaning of paragraph (2)) to that facility.
>>
>> A certification described in clause (ii) . . . of subparagraph (A) shall include a summary of the risks and benefits upon which the certification is based.
>
> (2) Appropriate transfer
>
> An appropriate transfer to a medical facility is a transfer–

>**(A)** in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health . . . and . . .
>
>**(B)** in which the receiving facility--
>
>>**(i)** has available space and qualified personnel for the treatment of the individual; and
>>
>>**(ii)** has agreed to accept transfer of the individual and to provide appropriate medical treatment;
>
>**(C)** in which the transferring hospital sends to the receiving facility all medical records (or copies thereof), related to the emergency condition for which the individual has presented, available at the time of the transfer, including records related to the individual's emergency medical condition, observations of signs or symptoms, preliminary diagnosis, treatment provided, results of any tests and the informed written consent or certification (or copy thereof) provided under paragraph (1)(A) . . .
>
>**(D)** in which the transfer is effected through qualified personnel and transportation equipment, as required including the use of necessary and medically appropriate life support measures during the transfer; and
>
>**(E)** which meets such other requirements as the Secretary may find necessary in the interest of the health and safety of individuals transferred.
>
>. . . .
>
>(e) Definitions
>
>In this section:
>
>>**(1)** The term "emergency medical condition" means--
>>
>>>**(A)** a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
>>>
>>>>**(i)** placing the health of the individual . . . in serious jeopardy,

7

>    **(ii)** serious impairment to bodily functions, or
>
>    **(iii)** serious dysfunction of any bodily organ or part;
>
> . . . .
>
> **(3)(A)** The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . . .
>
> **(B)** The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility . . . .

42 U.S.C. § 2395dd.

Plaintiffs' allegation that PMC "fails to provide emergency medical care within the scope and guidelines of [EMTALA]" is a conclusory allegation that does not raise the right to relief above the speculative level. From the factual allegations in the Amended Complaint, one can infer that KB came to PMC with an emergency medical condition. One cannot infer that PMC, or other Defendants acting as agents of PMC, failed to conduct an appropriate medical screening examination to determine the existence of her emergency medical condition. To the contrary, the factual allegations indicate that PMC did determine that KB's condition was of an emergency nature, or the transfer by ambulance to the Mercy Medical Center would not have been ordered. Nor can one infer that her transfer from PMC was effected in violation of EMTALA. Specifically, the Amended Complaint does not contain sufficient factual allegations to support a conclusion (1) that PMC, within the limitations of its available staff and facilities, failed to provide KB with further medical

examination and treatment necessary to ensure, with reasonable medical probability, that her condition would not materially deteriorate during the 93-minute ambulance ride to Sioux City, *and* (2) the transfer was not effected in compliance with 42 U.S.C. § 1395dd (c)(1).

If the Plaintiffs contend that KB's transfer was not effected in compliance with 42 U.S.C. § 1395dd(c)(1), *and* that PMC, within the limitations of its available staff and facilities, failed to provide KB with further medical examination and treatment necessary to ensure, with reasonable medical probability, that her condition would not materially deteriorate during her transfer to Sioux City, then the Plaintiffs should allege, at least in general, *what* medical examination or treatment PMC was required, and failed, to provide. The fact that KB's condition *did* deteriorate en route to Sioux City is not sufficient for a violation of EMTALA to be inferred.

Similarly, the Plaintiffs' state-law negligence claims are conclusory and lack sufficient factual allegations to create a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the claims. Specifically, the Plaintiffs have not alleged with any specificity what actions the Defendants, or any of them, took that they should not have taken, or what they did *not* do that they *should* have done.

If the Plaintiffs fail to state a claim under EMTALA, the Court lacks subject matter jurisdiction over all the Plaintiffs' claims. The Plaintiffs' proposed Second Amended Complaint does not cure the defect in the EMTALA claim, nor in the Plaintiffs' state-law negligence claims, and its filing would be futile. Accordingly, the Plaintiffs will be given leave to amend, but may not file the proposed Second Amended Complaint. Instead, they are given leave to file a Second Amended Complaint with sufficient factual allegations to provide the grounds on which their EMTALA claim rests, and with sufficient factual

allegations to support their state-law negligence claims. The Defendants' pending motions will be denied as moot, but without prejudice to reassertion following the filing of any Second Amended Complaint, and Plaintiffs' Motion to Strike also will be denied as moot.

IT IS ORDERED:

1. The Plaintiffs' Motion to Amend Complaint (Filing No. 38) is granted in part, as follows: Plaintiffs may file a Second Amended Complaint, in compliance with this Memorandum and Order, on or before November 12, 2010;

2. In the absence of the filing of a Second Amended Complaint on or before November 12, 2010, in compliance with this Memorandum and Order, the Plaintiffs' claims will be dismissed, without prejudice to refiling in state court; and

3. The Defendants' Motions to Dismiss (Filing Nos. 29, 31) and the Plaintiff's Motion to Strike (Filing No. 45) are denied as moot.

DATED this 1st day of November, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge